OPINION OF THE COURT
William B. Rebolini, J.
It is ordered that this motion by defendants, North Babylon Union Free School District, Sean C. Feeney and John Micciche (school district), for an order pursuant to CPLR 3124 compelling plaintiffs, Melissa “G” and Garry “G” to disclose certain information relating to Facebook accounts maintained by Melissa is granted only to the extent indicated herein and in all other respects such motion is denied; and it is further ordered that the parties shall satisfy all other outstanding disclosure demands within 60 days from the date of this order.
Following service of a notice of claim dated October 10, 2005, plaintiffs commenced this action to recover damages for, inter alia, personal injuries allegedly sustained by Melissa as the result of sexual contact that she had with a teacher employed by the school district and identified as defendant Danny Cuesta from September 2003 through March 2004. It is set forth in plaintiffs’ bill of particulars that on November 1, 2006, Cuesta pleaded guilty to having engaged in a course of conduct which was likely to be injurious to the physical, mental and moral welfare of Melissa, who was 15 or 16 years of age, by engaging in sexual acts with Melissa, including sexual intercourse and oral sex. It is also alleged in the bill of particulars that the injuries that plaintiff Melissa claims to have sustained are as follows:
“Repeated sexual injury and assault; nightmares and sleep deprivation, potential exposure to sexually transmitted diseases, missed time from school and school opportunities, emotional distress, mental distress, legal process trauma, alienation of affections, loss of enjoyment of life, post-traumatic stress disorder, loss of employment, loss/ impairment of educational and employment opportunities, educational expenses.”
By notice for discovery and inspection dated May 21, 2014, defendants demanded the production of complete, unedited account data for all Facebook accounts maintained by plaintiffs through the present. Defendants now move for an order compelling plaintiffs to disclose complete, unedited account data for all Facebook accounts maintained only by plaintiff Melissa, *391 including all postings, status reports, emails, photographs and videos posted on her web page to date. Plaintiffs have opposed the application.
In support of their application, defendants submitted printed pages from Melissa’s Facebook account depicting postings that were accessible to the general public on May 20, 2014, including photographs of Melissa engaged in a variety of recreational activities and “activities with her boyfriend . . . ; at work in a veterinary hospital; rock climbing; and out drinking with friends.” Toward the top of each page is a notation, “To see what she shares with friends, send her a friend request.” Defendants also submitted printed pages from an account that appears to be jointly held by Melissa and her boyfriend. Defendants assert that the public content on plaintiff’s Facebook pages, as well as the content available only to “friends,” are material and necessary to the defense of plaintiffs’ claims. In this regard, defendants note that plaintiff Melissa testified at her deposition on December 9, 2011 that she has “serious trust issues with everyone” and that she suffers from anxiety attacks. It was also her testimony that she was “struggling” in her relationship with her boyfriend and that she had “no trust” concerning others.
CPLR 3101 (a) broadly mandates “full disclosure of all matter material and necessary in the prosecution or defense of an action” (Ren Zheng Zheng v Bermeo, 114 AD3d 743, 744 [2d Dept 2014]). The statutory scope of disclosure applies to the discovery of information on social media websites, such as Face-book, provided the defendants make a showing that the information sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the plaintiff’s claim (see Richards v Hertz Corp., 100 AD3d 728 [2d Dept 2012], citing Patterson v Turner Constr. Co., 88 AD3d 617 [1st Dept 2011]). To warrant discovery, defendants must establish a factual predicate for their request by identifying relevant information in plaintiff’s Facebook account — that is, information that “contradicts or conflicts with plaintiff’s alleged restrictions, disabilities, and losses, and other claims” (Tapp v New York State Urban Dev. Corp., 102 AD3d 620, 620-621 [1st Dept 2013], quoting Patterson v Turner Constr. Co., 88 AD3d at 618). Indeed, the courts of this state have recognized that the postings on a Facebook account, if relevant, are not shielded from discovery merely because a party used Facebook’s privacy settings to restrict access (see Patterson v Turner Constr. Co., 88 AD3d at 618).
*392 Insofar as plaintiffs claim as part of their damages that Melissa suffers a loss of enjoyment of life, among other things, the scope of relevant information subject to disclosure is broad. Compensation for loss of enjoyment of life addresses the loss of an individual’s capacity to enjoy life by “participating in recreational activities, and drinking in the many other pleasures that life has to offer” (McDougald v Garber, 73 NY2d 246, 258 [1989, Titone, J., dissenting]). As defendants have shown that plaintiff’s public Facebook pages contain photographs of Melissa engaged in a variety of recreational activities that are probative to her damage claims, it is reasonable to believe that other portions of her Facebook pages may contain further evidence relevant to the defense (see Richards v Hertz Corp., 100 AD3d 728 [2d Dept 2012]).
The courts of this state have taken a variety of approaches toward the manner in which material on social media websites should be disclosed. In Romano v Steelcase Inc. (30 Misc 3d 426, 435 [Sup Ct, Suffolk County 2010]), the court directed plaintiff to deliver to defense counsel “a properly executed consent and authorization . . . permitting [the] defendant to gain access to plaintiff’s Facebook and MySpace records, including any records previously deleted or archived” by the social media websites. Similarly, in Jennings v TD Bank (2013 NY Slip Op 32783[U], *6 [Sup Ct, Nassau County 2013]), plaintiff was directed “to produce any and all current and historical Facebook pictures, videos or relevant status postings from her personal Facebook account since the date of the alleged incident, including any records previously deleted or archived.” In other cases, however, the courts have recognized that it is possible that not all Facebook communications are relevant to a party’s claims (see Patterson v Turner Constr. Co., 88 AD3d at 617). In an apparent effort to protect a litigant’s privacy, some courts have directed that a party’s Facebook postings be submitted to the court for an in camera inspection to assess the materiality and relevance of the materials (see e.g. Richards v Hertz Corp., 100 AD3d 728 [2d Dept 2012], supra; see also Nieves v 30 Ellwood Realty LLC, 39 Misc 3d 63 [App Term, 1st Dept 2013]; Loporcaro v City of New York, 35 Misc 3d 1209[A], 2012 NY Slip Op 50617[U] [Sup Ct, Richmond County 2012]).
In discovery matters, counsel for the producing party is the judge of relevance in the first instance (see Rozell v Ross-Holst, 2006 WL 163143, 2006 US Dist LEXIS 2277 [SD NY, Jan. 20, *393 2006, No. 05-Civ-2936 (JGKXJCF)]). While it has been suggested that an in camera review is appropriate to determine whether certain material on plaintiffs’ Facebook account is discoverable, an in camera inspection in disclosure matters is the exception rather than the rule, and there is no basis to believe that plaintiffs’ counsel can not honestly and accurately perform the review function in this case (see Rozell v Ross-Holst). Accordingly, plaintiff is directed to print out and to retain all photographs and videos, whether posted by others or by plaintiff herself, as well as status postings and comments posted on plaintiff’s Facebook accounts, including all deleted materials (postings). Notwithstanding defendants’ request for disclosure in this action of “the complete, unedited account data” for plaintiff’s Facebook accounts, this court is mindful that “[t]he fact that an individual may express some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress” (Giacchetto v Patchogue-Medford, Union Free Sch. Dist., 293 FRD 112, 115 [ED NY 2013]). Accordingly, not all of plaintiff’s personal communications to others are subject to scrutiny in connection with her claims. Since there is a reasonable expectation of privacy attached to the one-on-one messaging option that is available through Facebook accounts, private messages sent by or received by plaintiff need not be reviewed, absent any evidence that such routine communications with family and friends contain information that is material and necessary to the defense.
Within 60 days from the date of this order, plaintiffs’ counsel shall review the Facebook postings and shall disclose all postings that are relevant to plaintiffs’ damage claims.